IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**REUBEN ALEXANDER CORLEY**                                     **PLAINTIFF**

**V.**                                           **CIVIL ACTION NO. 3:22cv251-DAS**

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER OF SOCIAL SECURITY**            **DEFENDANT**

## MEMORANDUM OPINION AND JUDGMENT

This cause is before the court on the plaintiff's complaint for judicial review of an unfavorable final decision by the Commissioner of the Social Security Administration regarding his application for Disability Insurance and Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Fifth Circuit Court of Appeals. The court, having reviewed the administrative record, the briefs of the parties, the applicable law and having heard and considered oral argument, finds the decision of the Commissioner of Social Security should be affirmed.

## FACTS

The plaintiff, Reuben Alexander Corley, who has a long history of knee problems, including multiple surgeries over many years, filed for benefits on June 8, 2020, alleging onset of disability commencing on April 12, 2019. The Social Security Administration denied the claim initially and on reconsideration. His insured status does not expire until Decemeber 31, 2024.

Following the hearing, the ALJ issued an unfavorable decision on March 3, 2022. (Dkt. 9 p. 16-25).[1] The Appeals Council denied the request for review, and this timely appeal followed.

The ALJ found Corley had the following severe impairments: degeneration of the knees bilaterally, obesity and depression. The ALJ found he retained the residual functional capacity (RFC) to lift/ carry up to 20 pounds occasionally and 10 pounds frequently. He can stand or walk for 4 hours over the course of an 8-hour day and can sit for 6 hours of an 8-hour day. He can never climb ladders, ropes, or scaffolds and can only occasionally climb ramps and stairs. He can occasionally stoop, kneel, drive, and work around moving machinery. He can never crouch, crawl, work at heights, or climb ladders or scaffolds. He can sustain sufficient concentration and attention to understand, remember, and carry out tasks and job instructions for a 2-hour period in an 8-hour workday, with normal morning, noon, and afternoon breaks. He can interact with coworkers and supervisors, but not the general public. He can adapt to simple routine changes in the workplace.

The ALJ found Corley cannot perform any of his past relevant work as a carpet cleaner, forklift operator, groundskeeper, and construction laborer. The claimant was 29 years old, at the time of application, and is a younger individual with at least a high school education. Based on the testimony of the vocational expert, the ALJ found Corley could do other jobs existing in substantial numbers in the national economy, namely, mail clerk, which is unskilled light work (30,840 jobs); retail marker which is light unskilled work (30,000 jobs); and photocopy machine operator which is light, unskilled work (18,000 jobs). The ALJ, therefore, determined Corley was not disabled.

---

[1] All references are to the administrative record using the court's numbering system, rather than the administrative numbering.

## ANALYSIS

The plaintiff raises two issues on appeal. He asserts the ALJ erred in his analysis of and reliance on the medical opinions in this case. He also argues the ALJ failed to properly consider the evidence in the record.

### 1. Evaluation of Medical Opinions

The plaintiff argues the ALJ erred in his assessment of the expert opinions of Vicki Prosser, Ph.D.; Dr. Lisa Venkataraman, Dr. Glenn James and Dr. Pamela Buck, asserting that in each case the ALJ failed to adequately explain the treatment of the opinions, as part of assessing the plaintiff's residual functional capacity.

Beginning with applications filed on or after March 27, 2017, new regulations governed how ALJs evaluate medical opinions in disability cases, abandoning presumptions in favor of the opinions of treating medical providers. Under the current regulations, ALJs must determine the persuasiveness of experts' opinions using five factors, but the ALJ's are required to address only two factors in their decisions: the supportability and consistency of the expert opinions with the record. 20 C.F.R. § 404.1520c(b)(2).

In evaluating the supportability of a medical opinion, the regulations provide, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increases." *Vellone on Behalf of Vellone v. Saul*, No. 1:20-CV-26-1RA-KHP, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *report and recommendation,* 2021 WL 2801138 (S.D.N.Y. July 6, 2021). The consistency evaluation is "an all-encompassing inquiry focused on how well a medical source is supported, or not supported,

3

by the entire record." 20 C.F.R. § 404.1520c(c)(1) Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844, 5853, 82 FR 5844-01.

While the new regulations simplify the explanation required, ALJs must still provide an adequate explanation of the "persuasiveness" for all expert opinions. The decisions must provide the appellate court with sufficient information to conduct a meaningful appellate review of the decision-making process, revealing both the evidence the ALJ considered and the reasoning leading the ALJ to reach a given result. The Fifth Circuit has stated, an "ALJ does not need to comment on every piece of evidence, but only must build *an accurate and logical bridge between the evidence and the final determination. Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010)(emphasis added) (citing *Glomski v. Massanari*, 172 F. Supp. 2d 1079, 1082, 77 Soc.Rep.Serv. 305(E.D. Wis. 2001)). The cases addressing the new regulations recognize a sufficient explanation of the persuasiveness of medical opinions is critical to the ability of the courts to conduct meaningful appellate review. It is not sufficient to leave the court to speculate about the judge's reasoning, nor to ask the court to engage in *post hoc* rationalization.

### A. Mental Health Opinions and RFC

The plaintiff challenges the ALJs consideration of both opinions on the plaintiff's mental status. Vicki Prosser is a state agency consultant. Dr. Pamela Buck provided her report after doing a consultative examination on the plaintiff.

The ALJ analyzed the report from Vicki Prosser, Ph.D. as follows:

> Vicki Prosser, Ph.D., a state agency consultant, offered an opinion of the claimant's mental abilities in October 2020. She found that he had mild limitation of the ability to understand, remember, or apply information, with moderate limitation of the abilities to interact with others; to concentrate, persist, or maintain pace; or, to adapt or manage himself. Specifically, she stated that he could complete a normal forty-hour workweek without excessive interruptions from psychological symptoms. She found that he could interact appropriately with coworkers and

supervisors on a limited basis and adapt to a job setting (Exhibit 3A). The undersigned finds this opinion persuasive. The claimant has no mental health treatment in the record. He was consistently pleasant in examination and showed no cognitive, memory, or concentration deficits. The limitations described here are consistent with his own description of symptoms. (R 22).

The plaintiff argues the assessment is confusing and prejudicial error because Prosser found Corley could interact appropriately with coworkers and supervisors only on a limited basis, but the ALJ's RFC found Corley can interact with coworkers and supervisors, but not the general public.

The ALJ likewise did not adopt the restrictions from the report of Dr. Pamela Buck, who performed a consultative examination of the plaintiff. In discussing Buck's report, the ALJ wrote:

> Although there is no treatment history for mental impairments in evidence, Pamela Buck, Ph.D., performed a consultative mental evaluation of the claimant in October 2020. She noted he walked with a minor limp. He said that since having concussions, he was frequently angry and destructive. He said that he sometimes had thoughts of suicide, but never any plans. He endorsed occasional violent thoughts towards others. He also reported poor motivation. He was attentive and responsive throughout the interview. His behavior was socially appropriate. While he appeared slightly lethargic, he made good eye contact. He was cooperative and pleasant. His speech was normal in all phases. He had slightly reduced motor activity. He displayed a restricted affect and dysthymic mood. His thought processes were normal. There was no mention of any difficulty with concentration or memory. Dr. Buck diagnosed major depressive disorder. R. 19.

He further discussed her report:

> Dr. Buck offered an opinion of the claimant's mental abilities in her evaluation report. She said that he seemed unable to respond appropriately to coworkers and supervisors. She stated that he could perform routine, repetitive tasks, but would sometimes need encouragement (Exhibit 5F). The undersigned finds this opinion somewhat persuasive. Dr. Buck's evaluation is the only evidence in the record concerning his mental functioning. There are no treatment records. In all other records he behaved well and was cooperative. Even during the evaluation, he was pleasant and cooperative. The limitation of no ability to interact with others is not supported. Some limits are allowed but not a complete bar on interaction." R. 23.

5

While these professionals offered limitations that would have resulted in a more limited RFC, and in Buck's case, a finding of disability, the ALJ rejected those restrictions. The ALJ found Corley could interact with supervisors and coworkers, but not the general public. He provided a logical explanation for that decision, noting the lack of mental health treatment and Corley's cooperative and pleasant manner in both the evaluative process and as noted throughout his medical records. The court finds this explanation meets the requirements of the regulations and allows for meaningful review, and thus, the court finds no error in the evaluation of these reports and opinions.

### B. Physical RFC and SAMC Opinions

After reviewing the medical records, Dr. Venkataraman opined that Corley could perform work at a light level with additional restrictions. He would be unlimited in stooping and could frequently balance. He was limited to occasionally climbing ramps, stairs, ladders, ropes, and scaffolds, kneeling, crouching, and crawling. This was consistent with Dr. Jennings' report which included detailed physical and functional examination of the plaintiff. Dr. Glenn James affirmed Venkataraman's findings noting his review of Jennings' evaluation and the available x-rays.

The plaintiff argues the ALJ improperly relied on the reports of these SAMC (state agency medical consultants) because they are not supported by, or consistent with the medical evidence. The ALJ found the SAMC assessments persuasive "because it considered both the claimant's past soft tissue injuries in the knee, as well as the resultant osteoarthritis." R. 22. The plaintiff argues these opinions do not support the decision because they were formulated in

March and July of 2021, relying on February 2021 x-rays, but without consideration of the August 2021 x-rays performed at Baptist Memorial Hospital, North Mississippi.

For a variety of reasons the court rejects this argument. First, these SAMC's were relying not just upon the review of medical records, but on the consultative examination report prepared by Dr. Jennings. Jennings examined Corley in November of 2020. He found Corley walked with an antalgic gait but had full muscle strength in both legs. He noted tenderness in the right knee and mildly reduced range of motion in both knees. Corley was found to be able to squat fully and rise with moderate difficulty. He had no problems getting on or off the examination table. His gait testing was normal. The February 2021 x-rays showed joint space narrowing and mild osteophyte formation in both knees, greater on the right than the left. Jennings noted tenderness to palpation in the right knee diffusely, but no joint swelling, effusion, erythema or deformity. Jennings concluded Corley had no limitations with sitting or standing and mild limitations with prolonged walking due to joint knee pain. Nor did Corley need an assistive device for short or long distances or over uneven terrain. Exh. 6F.

The plaintiff argues the findings of the July 2021 x-rays are significant and material. Because these e-rays were not reviewed by the state agency physicians, he urges the court to find the existing opinions do not provide substantial evidence to support the RFC. This court has held that later medical developments can undermine earlier opinions, including those of the state agency doctors. Under 20 C.F.R. § 404.1520c(c)(5), the Commissioner must consider whether new evidence received after a prior administrative medical finding makes the finding more or less persuasive. But earlier opinions lose value in the decision-making process only where there is significant new evidence showing a change in the claimant's condition. *Patterson v. Kijakazi*, No. 1:21-CV-17-DAS, 2022 WL 452477, at *2 (N.D. Miss. Feb. 14,

2022) (Where the state agency consultants did not review records of a subsequent ankle injury, but the ALJ added restrictions to the RFC based on the later records, the decision was supported by substantial evidence); *Randle v. Saul,* Civil Action No. 1:20cv79 (N.D. Miss. Feb 16, 2021) report and recommendation adopted Civil Action No. 1:20 cv 79 (N.D. Miss. June 8, 2021) (Where the record showed new medical diagnoses and two surgeries after the SAMC reports, assuming the SAMC physicians would continue to adhere to their opinions, despite the later medical developments, was speculation.).

However, the court disagrees that BMH records and x-rays reveal significant, material changes in Corley's condition, between February and July 2021, that would undermine the medical opinions of these doctors and change the persuasiveness of the opinions. Corley went to BMH North Mississippi complaining of bilateral knee pain but indicated no recent injury. He reported he had been taking up to ten Tylenol per day for the pain. But his liver function tests were normal, a significant finding per the records, given the reported heavy Tylenol dosages. He reported the pain was worse on the right and aggravated by walking, consistent with his earlier complaints. No severe swelling was noted on examination and his range of motion was intact in both knees. He was counseled on daily limits for Tylenol dosages. Corley was given Toradol at the hospital, a short course of Tramadol for home and referred to his primary care provider.

The language in the July x-ray reports is not identical to the February report, in noting moderate spurring of the medial joint compartment in the left knee and moderate tricompartment degenerative changes of the knee on the right, but there is no significant joint effusion. This is not significantly different from the February x-ray report showing joint space narrowing and osteophyte formation in both knees. Given the similarity of the subjective

8

complaints and the findings on physical examinations, these records do not demonstrate a material worsening that would undermine the opinions already in the record. Additionally, the ALJ added restrictions in the physical RFC beyond those found by the agency physicians, giving Corley the benefit of any doubt in assessing his RFC.

Accordingly, the court finds the ALJ did not err in his evaluation and use of the challenged opinions.

### 2. Failing to Consider the Evidence of Record

The plaintiff also argues the ALJ improperly "picked and chose" only the evidence which supported denial of benefits. *Loza v. Apfel*, 219 F.2d 378 (5th Cir. 2000). The court disagrees.

The plaintiff testified he always wore braces on both knees and that he and his orthopedic surgeon had discussed "eventual knee replacement." The ALJ stated there is no mention of bracing in the medical records nor discussion about a total knee replacement. R. 21-22. The plaintiff cites to orthopedic records documenting this discussion, but this note is from May 11, 2016, substantially predating this claim. In any event, the court finds this factual error is harmless.

The plaintiff also argues the ALJ did not adequately consider the August 2021 records from Baptist Memorial. The ALJ noted in August 2021, the claimant sought emergency room treatment for his knee pain. As already noted, the August x-rays showed moderate tricompartmental degeneration in the right knee and some spurring in the left knee, but Corley still had full range of motion. The plaintiff argues the ALJ failed to consider the spurring referred to in the x-ray report regarding the left knee. The administrative record in this case demonstrates the plaintiff has suffered injuries and arthritis in both knees and abnormalities on X-ray of both knees, not just in July, but also in February 2021. Corley admittedly he has pain

9

in both knees, consistently worse on the right. Despite these problems, substantial evidence supports the ALJ's decision that the plaintiff is not disabled. The failure to mention this one x-ray regarding the left knee, even if considered error, is not prejudicial.

## **CONCLUSION**

Because the decision is supported by substantial evidence and the court finds no prejudicial error, the court affirms the Commissioner's decision denying benefits.

**IT IS ORDERED AND ADJUDGED** that the decision of the Commissioner is hereby affirmed.

**SO ORDERED AND ADJUDGED** this the 3rd day of October, 2023.


/s/ David A. Sanders
**U.S. MAGISTRATE JUDGE**